*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

★ ★ ★ ★ ★ ★ ★

# OPINION

No. 04-08-00090-CV

Eliazar **RUIZ** and G.E.M. Materials, Inc.,
Appellants

v.

Henrietta S. **GUERRA**, Individually and as Representative of the Estate of Daniel Guerra, Jr.,
Deceased, and Brandi N. Guerra, Jonathan S. Guerra, and Christopher E. Guerra,
Appellees

Henrietta S. Guerra, Individually and as Representative of the Estate of Daniel Guerra, Jr.,
Deceased, and Brandi N. Guerra, Jonathan S. Guerra, and Christopher E. Guerra,
Cross-Appellants

v.

Sterling Truck Corporation,
Cross-Appellee

From the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2004-CI-18420
Honorable Andy Mireles, Judge Presiding

Opinion by:     Phylis J. Speedlin, Justice

Sitting:        Catherine Stone, Chief Justice
                Phylis J. Speedlin, Justice
                Steven C. Hilbig, Justice

Delivered and Filed:  May 27, 2009

AFFIRMED IN PART; REVERSED AND RENDERED IN PART

In this personal injury and wrongful death case, Eliazar Ruiz and G.E.M. Materials, Inc. appeal the trial court's judgment in favor of Henrietta S. Guerra, individually and as representative of the Estate of Daniel Guerra, Jr., deceased, and Brandi N. Guerra, Jonathan S. Guerra, and Christopher E. Guerra (hereinafter, "the Guerra family"). In a cross-appeal, the Guerra family challenges the assessment of court costs. We affirm the judgment of the trial court in part, and reverse and render in part.

### FACTUAL AND PROCEDURAL BACKGROUND

On the morning of December 9, 2004, Eliazar Ruiz, an employee of G.E.M. Materials, was driving a dump truck filled with sand in the right-hand lane of IH-35 South. At the same time, Daniel Guerra, Jr. was driving an HEB Grocery Company eighteen-wheeler tractor-trailer in the center lane. The two trucks collided and veered sharply to the right, leaving the highway, crossing the access road, and crashing first into a car traveling on the access road and then into a concrete retaining wall. Madeline and Joseph Yorfino, passengers in the car, were pinned inside their car, upside down, between the trucks and the retaining wall. The HEB truck caught fire. Both the HEB driver, Daniel Guerra, Jr., and one passenger in the car, Joseph Yorfino, died at the scene of the accident. Madeline Yorfino and the G.E.M. driver, Eliazar Ruiz, were taken to the hospital for treatment of their injuries.

Madeline Yorfino, individually and as personal representative of the Estate of Joseph R. Yorfino, Sr., deceased, Joseph R. Yorfino, Jr., individually, and Stella Duffy, individually ("the Yorfino family") and Ruiz originally filed suit against HEB and the Estate of Daniel Guerra,

Jr.[1]  On May 10, 2006, HEB filed a motion for leave to designate two entities as responsible third parties: (1) Alamo City Truck Service, Inc. ("Alamo City"), a maintenance company, and (2) Sterling Truck Corporation ("Sterling"), the manufacturer of the HEB truck; the motion was granted by the trial court in a written order dated June 1, 2006.  HEB also filed a First Amended Answer, alleging that Ruiz's negligence caused the fatal accident.  On May 23, 2006 and June 7, 2006, the Yorfino family and Ruiz sued Alamo City and Sterling.  Thereafter, on October 2, 2006, the Guerra  family filed a plea in intervention, asserting claims against Alamo City and Sterling.  On December 8, 2006, the day before the two-year statute of limitations ran, the Yorfino family amended their pleadings, cross-claiming against Ruiz and filing suit against G.E.M., alleging that Ruiz and G.E.M. were negligent and responsible for the accident.  The Guerra family filed a First Amended Petition in Intervention on February 2, 2007, more than two years after the accident, bringing a cross-claim against G.E.M.  Three days later, the Guerra family filed their Third Amended Original Petition, cross-claiming against Ruiz.

The case proceeded to trial in October 2007, with the Yorfino family[2] and the Guerra family as plaintiffs and Ruiz, G.E.M., and Sterling as defendants.  Conflicting evidence was presented as to the cause of the accident.  Ruiz and three eyewitnesses testified that the HEB truck was to blame for causing for the accident; however, an expert accident reconstructionist disagreed, and opined that the accident occurred when the G.E.M. truck left its lane and hit the HEB truck.  Additionally, testimony was presented regarding the procedures that a motor vehicle carrier company must follow

---

[1] Initially, suit was filed by Ruiz against HEB.  Thereafter, the Yorfino family filed a separate suit against HEB and the Estate of Daniel Guerra, Jr.  The Yorfino family later nonsuited Daniel Guerra, Jr.'s estate.  Both cases were consolidated on January 31, 2005.

[2] Prior to trial the Yorfino family settled with HEB.

when hiring a driver. Following the close of evidence, Ruiz and G.E.M. moved for a directed verdict based upon the expiration of limitations as to the individual wrongful death claims of Henrietta Guerra, Christopher Guerra, and Jonathan Guerra; the trial court denied the motion. Subsequently, the jury returned a verdict determining that Ruiz was negligent and that G.E.M. negligently entrusted a vehicle to Ruiz. The jury apportioned 25% of the negligence to Ruiz and 75% to G.E.M. The judgment also provided that the Yorfino family and the Guerra family take nothing against Sterling. Ruiz and G.E.M. were ordered to pay court costs with respect to the claims asserted against them by the Yorfino family and the Guerra family; the Guerra family was ordered to pay Sterling's court costs. Ruiz and G.E.M. timely appealed. Subsequent to filing the notice of appeal, Ruiz and G.E.M. settled with the Yorfino family.

## DIRECT APPEAL

On appeal, Ruiz and G.E.M. argue that the trial court erred in entering judgment in favor of the Guerra family because: 1) the claims of Henrietta Guerra, Christopher Guerra, and Jonathan Guerra are barred by limitations as a matter of law; 2) the evidence was legally and factually insufficient to support the jury's determinations that Ruiz's negligence proximately caused the accident; 3) the evidence was legally and factually insufficient to support the jury's determinations that G.E.M. negligently entrusted a vehicle to Ruiz and that such conduct caused the accident; and 4) evidence regarding a failed drug test taken by Ruiz two years before the accident should not have been admitted. Ruiz and G.E.M. additionally claim the trial court erred in entering judgment in favor of the Estate of Daniel Guerra, Jr. because the evidence was factually insufficient to support the jury's award and the amount of the award of damages for conscious physical and emotional pain prior to death. Finally, they contend the trial court erred in entering judgment in favor of Henrietta

Guerra because the evidence was legally and factually insufficient to support the jury's award and the amount of the award of damages for loss of inheritance.

***Statute of Limitations***

Initially, Ruiz and G.E.M. argue the trial court erred in entering judgment in favor of Henrietta Guerra, Christopher Guerra, and Jonathan Guerra, because their individual wrongful death claims were barred as a matter of law by the statute of limitations.[3]  A wrongful death claim is governed by a two-year statute of limitations.  TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(b) (Vernon Supp. 2008) ("A person must bring suit not later than two years after the day the cause of action accrues in an action for injury resulting in death.  The cause of action accrues on the death of the injured person.").  Though the accident at issue occurred on December 9, 2004, the Guerra family did not assert any claims against Ruiz or G.E.M. until February of 2007, when they filed a cross-claim against G.E.M. on February 2, 2007 and also filed a cross-claim against Ruiz on February 5, 2007.  The Guerra family responds that their claims against Ruiz and G.E.M. are "saved" by pleadings Sterling filed which "effectively designated" Ruiz and G.E.M. as responsible third parties, thereby allowing the Guerra family to avoid the limitations bar.  In support of their argument, the Guerra family directs us to section 33.004(e) of the Texas Civil Practice and Remedies Code ("the Code"), which provides that a claimant may join a person who is designated as a responsible third party within sixty days of the designation "even though such joinder would otherwise be barred by limitations."  TEX. CIV. PRAC. & REM. CODE ANN. § 33.004(e) (Vernon 2008).  The statute of limitations exception afforded by section 33.004(e), however, is not available unless the person

---

[3]  Ruiz and G.E.M. acknowledge that the tolling provision of section 16.001 of the Texas Civil Practice & Remedies Code renders the claims of Brandi Guerra, who was sixteen at the time of her father's death, and the Estate of Daniel Guerra, Jr. timely.

whom the claimant seeks to join has been properly designated. *See id.* To determine whether Sterling properly designated Ruiz and G.E.M. as responsible third parties, we begin by examining the entire text of section 33.004.

"[I]t is cardinal law in Texas that a court construes a statute, first, by looking to the plain and common meaning of the statute's words." *Reed v. State*, 269 S.W.3d 619, 624 (Tex. App.—San Antonio 2008, no pet.) (quoting *Fitzgerald v. Advanced Spine Fixation Sys., Inc.,* 996 S.W.2d 864, 865 (Tex. 1999) (internal quotation omitted)). When the statute's text is clear and unambiguous, we interpret the statute according to its plain meaning, s*ee City of Rockwall v. Hughes,* 246 S.W.3d 621, 625-26 (Tex. 2008), and we must adopt the interpretation supported by the statute's plain language unless that interpretation would lead to absurd results. *Tex. Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.,* 145 S.W.3d 170, 177 (Tex. 2004). We also construe the statute as a whole and will not give one provision a meaning which is out of harmony or inconsistent with other provisions. *See Marcus Cable Assocs., L.P. v. Krohn,* 90 S.W.3d 697, 706 (Tex. 2002). We presume that the Legislature intended a just and reasonable result by enacting the statute. TEX. GOV'T CODE ANN. § 311.021(3) (Vernon 2005).

Section 33.004 of the Code, titled "Designation of Responsible Third Party," provides in relevant part:

> (a) A defendant may seek to designate a person as a responsible third party by filing a motion for leave to designate that person as a responsible third party. The motion must be filed on or before the 60th day before the trial date unless the court finds good cause to allow the motion to be filed at a later date.

> (b) Nothing in this section affects the third-party practice as previously recognized in the rules and statutes of the state with regard to the assertion by a defendant of rights to contribution or indemnity. Nothing in this section affects the filing of cross-claims or counterclaims.

. . .

(e) If a person is designated under this section as a responsible third party, a claimant is not barred by limitations from seeking to join that person, even though such joinder would otherwise be barred by limitations, if the claimant seeks to join that person not later than 60 days after that person is designated as a responsible third party.

(f) A court shall grant leave to designate the named person as a responsible third party unless another party files an objection to the motion for leave on or before the 15th day after the date the motion is served.

. . .

(h) By granting a motion for leave to designate a person as a responsible third party, the person named in the motion is designated as a responsible third party for purposes of this chapter without further action by the court or any party.

TEX. CIV. PRAC. & REM. CODE ANN. § 33.004(a), (b), (e), (f), (h) (Vernon 2008).

The Guerra family asks us to hold that under section 33.004(e) they are not barred by limitations because pleadings filed by Sterling effectively designated both Ruiz and G.E.M. as responsible third parties.[4] The Guerra family directs us to Sterling's February 15, 2007 pleading entitled "First Amended Plea Against Capacity, Special Exceptions, and Original Answer to the Third Amended Guerra Petition in Intervention," which they claim effectively designated Ruiz and G.E.M. as responsible third parties.[5] The Guerra family further argues that because Ruiz and G.E.M. filed no objection to Sterling's pleading, "this designation and the corresponding statute-of-limitations extension were automatic." We respectfully disagree.

---

[4] We look only to the pleadings filed by Sterling 60 or more days prior to trial as required by section 33.004(a). TEX. CIV. PRAC. & REM. CODE ANN. § 33.004(a) ("[t]he motion must be filed on or before the 60th day before the trial date. . .").

[5] The Guerra family argues that their cross-claims against G.E.M. and Ruiz (filed on February 2, 2007 and February 5, 2007) became effective on the day of, but after, Sterling's February 15, 2007 filing.

Section 33.004(a) clearly requires that the defendant first file a motion for leave to designate a person as a responsible third party. TEX. CIV. PRAC. & REM. CODE ANN. § 33.004(a). "A defendant may seek to designate a person as a responsible third party *by filing a motion for leave* to designate that person as a responsible third party. *The motion* must be filed on or before the 60th day before the trial date unless the court finds good cause to allow *the motion* to be filed at a later date." *Id.* (emphasis added); *see also Sheffield v. Begeman*, 274 S.W.3d 846, 850 (Tex. App.—Eastland 2008, pet. filed) (holding that when third party's identity is known, section 33.004(a) unambiguously requires defendant to file a timely motion for leave to designate responsible third party). It is undisputed that Sterling did not file a motion for leave to designate Ruiz and G.E.M. as responsible third parties as required by the statute.

The Guerra family contends, however, that the February 15, 2007 pleading filed by Sterling "effectively" designated Ruiz and G.E.M. as responsible third parties. Although we question whether a pleading can substitute for the motion required by section 33.004(a), we disagree that the February 15, 2007 pleading "effectively designated" Ruiz and G.E.M. as responsible third parties. The only reference to Ruiz and G.E.M. found in the February 15, 2007 pleading is listed under a section entitled "Affirmative Defenses" and consists of a single sentence, which states as follows:

> Sterling alleges that intervenors' alleged damages were proximately caused by, or in the alternative were solely proximately caused by, the acts, omissions, or fault of Eliazar Ruiz, who was acting at the time within the course and scope of his employment with G.E.M. Materials, Inc.

This language does not state that Sterling seeks to designate, or is designating, Ruiz and G.E.M. as responsible third parties, nor does it reference section 33.004.[6]

---

[6] The Guerra family also contends that a pleading filed by Sterling on April 17, 2007, in which Sterling sought contribution from HEB and G.E.M., likewise "effectively" designated G.E.M. as a responsible third party. Again,

Moreover, other provisions of section 33.004 contemplate affirmative court action that was wholly absent here. Subsection (f) states that, "*A court shall grant leave* to designate the named person as a responsible third party unless another party files an objection to the motion for leave on or before the 15th day after the date the motion is served." TEX. CIV. PRAC. & REM. CODE ANN. § 33.004(f) (emphasis added)[7]. Section 33.004(h) further provides, "*By granting a motion for leave to designate* a person as a responsible third party, the person named in the motion is designated as a responsible third party for purposes of this chapter *without further action by the court* or any party." TEX. CIV. PRAC. & REM. CODE ANN. § 33.004(h) (emphasis added).

Here, the record does not reflect that Sterling filed a motion for leave, or sought court action to grant leave, to designate Ruiz and G.E.M. as responsible third parties. Further, no court order reflecting that such leave was granted appears in the record before us. In order to invoke the limitations exception provided in section 33.004(e), a person must be designated "under this section" as a responsible third party. TEX. CIV. PRAC. & REM. CODE ANN. § 33.004(e). A plain reading of the statute compels us to hold that such a designation cannot be achieved without both the timely filing of a motion for leave and a court order granting leave to designate the named person.

In oral argument before this court, counsel for the Guerra family argued that the procedural requirements contained in sections 33.004(a) and (f) are excused by section 33.004(b) when the

---

this pleading is devoid of any language putting G.E.M. on notice that Sterling is designating it as a responsible third party, and the pleading wholly fails to mention section 33.004. Further, no motion for leave was filed, as required by section 33.004(a). TEX. CIV. PRAC. & REM. CODE ANN. § 33.004(a).

[7] *See also* TEX. CIV. PRAC. & REM. CODE ANN. § 33.004(g) ("If an objection to the motion for leave is timely filed, the court shall grant leave to designate the person as a responsible third party unless the objecting party establishes: (1) the defendant did not plead sufficient facts concerning the alleged responsibility of the person to satisfy the pleading requirement of the Texas Rules of Civil Procedure; and (2) after having been granted leave to replead, the defendant failed to plead sufficient facts concerning the alleged responsibility of the person to satisfy the pleading requirements of the Texas Rules of Civil Procedure.").

person being designated as a responsible third party is already a party to the suit. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 33.004(a), (b), (f). We disagree. No such exception is set forth within the plain language of section 33.004(b), nor can it be found in a fair reading of the statute as a whole. The designation of a responsible third party is governed by sections 33.004(a)-(*l*). *Id.* at §§ 33.004(a)-(*l*). Section 33.004(b) merely reflects the legislative intent that "previously recognized" third party practice, or the filing of cross-claims or counterclaims, is not affected by the requirements for designating a responsible third party. *Id.* § 33.004(b).

Reading the statute in its entirety and according to its plain language, we conclude that a defendant seeking to designate a responsible third party has the burden to both file a motion for leave to designate a responsible third party and obtain the court's favorable ruling on the motion. TEX. CIV. PRAC. & REM. CODE ANN. § 33.004(a), (f). It is only upon the court's granting of a motion for leave to designate a person as a responsible third party that the designation becomes effective. TEX. CIV. PRAC. & REM. CODE ANN. § 33.004(h) ("By granting a motion for leave to designate a person as a responsible third party, the person named in the motion *is designated* as a responsible third party. . .") (emphasis added). Once a favorable ruling is obtained and a responsible third party *is* designated, a claimant can join the newly designated responsible third party even though limitations has expired, so long as joinder is accomplished within 60 days. TEX. CIV. PRAC. & REM. CODE ANN. § 33.004(e). Because the record before us contains neither a motion for leave to designate Ruiz and G.E.M. as responsible third parties nor an order granting the motion, section 33.004(e) does

not apply. [8] Accordingly, Henrietta Guerra, Christopher Guerra, and Jonathan Guerra cannot save their claims against Ruiz and G.E.M. on that basis. Before fully disposing of this limitations issue, however, we must address the Guerra family's alternative arguments.

As an alternative response to the appellants' assertions that their wrongful death claims are barred by limitations, the Guerra family contends that Brandi, who was a minor at the time of the accident, timely brought a wrongful death action not only for her own benefit, but also for the benefit of her mother and two brothers. In support of their argument, the Guerra family directs us to their "Fourth Amended Petition in Intervention" filed on March 16, 2007, in which they asserted that suit was brought "both individually and on behalf of each other pursuant to section 71.004(b)." The Guerra family contends that section 71.004 of the Code permits Brandi to bring "the action" for the benefit of the entire family, even though the adults' claims are time-barred. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 71.004(b) (Vernon 2008) ("The surviving spouse, children, and parents of the deceased may bring **the action** or one or more of those individuals may bring **the action** for the benefit of all.") (emphasis added). We agree that because Brandi was a minor at the time of her father's death, the statute of limitations on her entitlement to bring a wrongful death claim was tolled until she reached the age of 18. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.001(a)(1), (b). We disagree, however, that the tolling afforded by Brandi's minority extends to her mother and brothers.

At common law, there existed no right to recover for the wrongful death of another person. *See In re Labatt Food Service, L.P.*, No. 07-0419, 2009 WL 353524, at *3 (Tex. Feb. 13, 2009) ( orig.

---

[8] In supplemental authority filed in this court, the Guerra family cites a recent El Paso opinion for the proposition that a court order is not required to effectuate the designation of a responsible third party under section 33.004. *See Moreno v. Palomino-Hernandez*, 269 S.W.3d 236, 243 (Tex. App.—El Paso 2008, pet. filed). In *Moreno*, however, the defendant did timely file a motion for leave to designate former co-defendant as a responsible third party, which was granted by the trial court. *Id.*

proceeding) (citing *Russell v. Ingersoll-Rand Co.*, 841 S.W.2d 343, 344 (Tex. 1992)). The Wrongful Death Act was enacted to create a cause of action allowing the surviving parents, children, and spouse of a deceased tort victim to recover damages for their *own* losses from the victim's death. TEX. CIV. PRAC. & REM. CODE ANN. §§ 71.002-.004 (Vernon 2008); *Labatt*, 2009 WL 353524, at \*3. "[W]rongful death claimants have an individually owned statutory cause of action." *In re Golden Peanut Co., LLC,* 269 S.W.3d 302, 312 (Tex. App.—Eastland 2008, orig. proceeding [mand. pending]); *see In re McCoy*, 373 F.Supp. 870, 875 (W.D. Tex. 1974) (wrongful death statute is designed to compensate the statutory beneficiaries for their own losses resulting from the death of the deceased). Because each plaintiff in a wrongful death action suffers a distinct, apportionable injury due to a family member's death, *see Utts v. Short*, 81 S.W.3d 822, 835 (Tex. 2002), each plaintiff must prove his or her own entitlement to recover. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 71.010(b) (Vernon 2008) ("The damages awarded shall be divided, in shares as found by the jury in its verdict, among the individuals who are entitled to recover and who are alive at that time.").

With certain exceptions, a two-year limitations period applies to a wrongful death action. TEX. CIV. PRAC. & REM. CODE ANN. §§ 16.003(b), 16.001(a)(1), (b); *see, e.g., Enciso v. Chmielewski*, 16 S.W.3d 858, 860 (Tex. App.—Houston [14th Dist.] 2000, no pet.). Minors, such as Brandi, receive the benefit of tolling of limitations for their cause of action until they reach the age of 18. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.001(a)(1), (b). The Guerra family would have us interpret section 71.004 to extend the minor plaintiff's tolling benefit to the other statutory beneficiaries. Case law simply does not support their argument.

Case law illustrates that the limitations period must be calculated for each wrongful death claimant, and some statutory beneficiaries may be barred while others receive the benefit of tolling.

In *Cox v. McDonnell-Douglas Corp.*, a widow and her three minor children brought a wrongful death action eight years after the decedent's death. *Cox v. McDonnell-Douglas Corp.*, 665 F.2d 566, 567 (5th Cir. 1982). The Fifth Circuit determined that the children's claims were not time-barred because the action was filed prior to the expiration of the applicable limitations period. *Id.* at 573. The widow argued that her claim was also timely because she was misled as to the cause of her husband's death and was thus entitled to the benefits of the "discovery rule" and the "fraudulent concealment" doctrine. *Id.* Although the court ultimately did not resolve whether the widow's claim was barred by limitations, it noted that she was "not entitled to the benefit of the minority tolling provision." *Id.* Additionally, in *Tex. Utilities Co. v. West*, 59 S.W.2d 459, 460 (Tex. Civ. App.—Amarillo 1933, writ ref'd), the decedent's widow, acting for herself and on behalf of her two minor children, and the decedent's parents, brought wrongful death claims more than three years after the decedent was killed. The defendant claimed that limitations barred all the plaintiffs' claims; the trial court sustained the defendant's contention as to the individual claims of the surviving wife and parents of the decedent, but held that limitations did not defeat the claims of the minor plaintiffs. *Id.* The Amarillo court of appeals affirmed the trial court's judgment, holding that although the wrongful death claims brought by the surviving adults were barred by limitations, limitations did not defeat the claims of the children. *Id.* at 461.

In addition, the statutory language itself does not support the Guerra family's argument that the tolling afforded by Brandi's minority extends to her mother and brothers. Nothing within the plain language of section 71.004(b) suggests that it is intended to extend limitations or create an additional tolling exception for a wrongful death claimant. To the contrary, section 71.004(b) only deals with a statutory beneficiary's "standing" to bring a wrongful death action on behalf of the other

statutory beneficiaries; it contains no reference to limitations. TEX. CIV. PRAC. & REM. CODE ANN. § 71.004(b). "The [Texas Wrongful Death Act] contemplates that only one suit shall be brought, which shall be for the benefit of all parties entitled to recover." *See Avila v. St. Luke's Lutheran Hosp.*, 948 S.W.2d 841, 850 (Tex. App.—San Antonio 1997, writ denied) (requirement that all beneficiaries be parties was enacted chiefly to protect the defendant from multiple suits arising out of the same death). Accordingly, we agree that under section 71.004(b) any one statutory beneficiary can initiate a wrongful death action on behalf of the other beneficiaries. However, nothing in the statutory language of section 71.004 can be interpreted to resurrect a wrongful death claim that is barred by limitations. The fact that one beneficiary has standing to bring a single suit on behalf of all has no bearing on whether the statute of limitations bars the individual claims of other statutory beneficiaries. *See Utts*, 81 S.W.3d at 844 ("each individual wrongful death beneficiary has the right to recover damages proportionate to his or her injury").

Here, at the time the Guerra family first pled a cause of action against Ruiz and G.E.M., the claims of Brandi's mother and brothers were clearly barred by limitations. While there is no dispute that Brandi may proceed with her claim, there is no language in section 71.004, or otherwise in the Code, which permits her to resurrect the time-barred claims of her mother and brothers. Thus, the rights of Henrietta Guerra, Jonathan Guerra, and Christopher Guerra to recover against Ruiz and G.E.M. cannot be saved on this basis.

Lastly, the Guerra family maintains that Ruiz and G.E.M. waived any potential limitations defense in at least three ways. First, they did not plead limitations as an affirmative defense to Brandi Guerra's wrongful death claim as required by Rule 94 of the Texas Rules of Civil Procedure. *See* TEX. R. CIV. P. 94. Second, Ruiz and G.E.M. failed to file a verified denial stating that Brandi lacked

the capacity to bring a wrongful death claim for the "benefit of all" or could not recover in the capacity in which she sued. *See* TEX. R. CIV. P. 93. Third, Ruiz and G.E.M. failed to specifically deny the Guerra family's allegation that "[a]ll conditions precedent to the filing of this cause . . . and the entry of judgment against Defendants for the full amount prayed for have been met and/or have occurred." *See* TEX. R. CIV. P. 54.

We are not persuaded by these arguments. To begin with, Ruiz and G.E.M. did not challenge Brandi's wrongful death claim because they concede that her claim was timely filed under the tolling provided by section 16.001. Similarly, Ruiz and G.E.M. did not challenge Brandi's capacity to sue because they acknowledge that she could bring suit pursuant to section 16.001. Further, we do not agree that Rule 54 applies to the facts of this case. *See* TEX. R. CIV. P. 54. Ruiz and G.E.M. did timely file an amended answer seventeen days prior to trial in which they asserted their limitations defense to the claims of Henrietta Guerra, Christopher Guerra, and Jonathan Guerra. *See* TEX. R. CIV. P. 63 (amended pleadings must be filed at least 7 days before trial unless later filing is permitted by leave of court). Accordingly, we do not agree that Ruiz and G.E.M. waived their limitations defense.

In summary, having rejected each of the Guerra family's arguments, we hold that the claims of Henrietta Guerra, Christopher Guerra, and Jonathan Guerra against Ruiz and G.E.M. are barred by the statute of limitations as a matter of law. Accordingly, the trial court erred in entering judgment in favor of Henrietta Guerra, Christopher Guerra, and Jonathan Guerra. Ruiz and G.E.M.'s first issue is sustained. Due to our resolution of this issue, we need not address the fifth issue raised by Ruiz and G.E.M., in which they argue there is no evidence to support the award to Henrietta Guerra for loss of inheritance.

### *Sufficiency of the Evidence on the Issue of Proximate Causation*

In their second issue, Ruiz and G.E.M. contend the trial court erred in entering judgment in favor of the Guerra family[9] because there was legally and factually insufficient evidence to support the jury's finding that negligence on the part of Ruiz proximately caused the accident at issue. Negligence consists of three essential elements: (1) a legal duty owed by one person to another; (2) breach of that duty; and (3) damages proximately resulting from that breach. *D. Houston, Inc. v. Love,* 92 S.W.3d 450, 454 (Tex. 2002); *Uniroyal Goodrich Tire Co. v. Martinez*, 928 S.W.2d 64, 68 (Tex. App.—San Antonio 1995), *aff'd*, 977 S.W.2d 328 (Tex. 1998). To show that conduct caused an injury, the plaintiff must present evidence of cause in fact and foreseeability. *Love,* 92 S.W.3d at 454.

When a party challenges the legal sufficiency of the evidence supporting an adverse finding on an issue on which it did not have the burden of proof, it must demonstrate on appeal that there is no evidence to support the adverse finding. *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex. 1983); *Collins & Aikman Floorcoverings, Inc. v. Thomason,* 256 S.W.3d 402, 407 (Tex. App.—San Antonio 2008, pet. denied). We consider all the evidence in the light most favorable to the jury's finding of the disputed fact, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson,* 168 S.W.3d 802, 810-11 (Tex. 2005). A legal sufficiency challenge may only be sustained when: (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or rules of evidence from

---

[9] Due to our resolution of the first issue, any future mention of "the Guerra family" refers only to Brandi Guerra and the Estate of Daniel Guerra, Jr.

giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *City of Keller,* 168 S.W.3d at 810. In reviewing factual sufficiency, we consider all the evidence and will set aside the verdict only if the evidence supporting the jury finding is so weak or so against the overwhelming weight of the evidence that the finding is clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986). In conducting this review, we do not substitute our judgment for that of the jury, as they are the sole judge of the credibility of the witnesses and the weight to be given their testimony. *City of Keller,* 168 S.W.3d at 819, 821.

The following evidence was presented at trial. Ruiz testified that on the morning of the accident, he was traveling at 45 to 50 m.p.h. in the right lane of a three-lane highway. Ruiz was about to move to the middle lane when he saw the HEB tractor-trailer in the far left lane approaching at a fast speed with its right blinker on. Next, he heard a loud bang, and the HEB truck hit his truck on the driver's side door. Ruiz was certain he maintained his lane of traffic the entire time.

Wayne Ratliff was about to enter the highway when he heard a "pop" resembling a tire exploding. He saw the HEB truck do a "little side-to-side," and then straighten out before crossing the highway, hitting the dump truck, and pushing it into a car on the access road. Ratliff was not certain what lanes the trucks were in, but thought the HEB truck was in the far left lane, and was traveling faster than the dump truck.

Jeff Rumsey was driving a semi truck in front of the two trucks on IH-35. He heard a loud popping noise prior to seeing the HEB truck suddenly careen to the right. Rumsey believed the HEB truck was in the middle lane at the time the trucks collided. He did not see the dump truck do

anything to cause the accident. Rumsey stressed that the accident happened so long ago and that all the vehicles were traveling so fast that he had a difficult time recalling exactly what happened.

Bryan Hubertus testified that he was following the HEB truck on IH-35 and noticed that it was weaving a bit due to the wind. The HEB truck moved to the left lane to pass another semi truck, and then moved back toward the center lane, but never stopped and kept moving to the right until it hit the dump truck. Hubertus did not hear any loud noises prior to the impact, and did not describe the HEB truck's movement as erratic or sudden. He speculated that the point of impact between the two trucks was toward the back of the dump truck. He did not notice anything the driver of the dump truck did to cause the accident.

Steve Irwin, an accident reconstructionist hired by the Yorfino family, testified that his office spent 400 hours reviewing this accident. Irwin presented numerous accident photographs and diagrams to the jury, as well as a three-dimensional digital recreation of the accident. Irwin placed the HEB truck in the center lane at the time of the accident due to the presence of specific tire marks from the HEB truck in the center lane. Irwin believed the dump truck came over from the right lane and into the center lane and had a side-to-side wreck with the HEB truck. He stated that the left-rear of the dump truck made contact with the right-front corner of the HEB trailer. Irwin based this conclusion on the tire marks in the middle lane and on damage to the trucks. Irwin explained that the rightward movement of the vehicles started when the heavier dump truck's left rear corner hit the right front of the HEB trailer.

Irwin also explained how both the physical evidence, and the absence of other physical evidence, negated G.E.M.'s theory that the HEB truck left its lane and hit the dump truck. Had the lightly-loaded HEB truck suddenly veered to the right and hit the heavier sand-laden dump truck, the

tire marks and damage to the vehicles would have looked very different. Additionally, Irwin specifically refuted Hubertus' eyewitness account by explaining that it was impossible for the HEB truck to have continuously moved from the left lane to the right lane because of the HEB tire marks in the center lane. Irwin posited that Hubertus may have missed the one to two seconds that the dump truck was in the middle lane.

Mark Leonard, an accident reconstructionist retained by Sterling, testified that he reached the same conclusions that Irwin did regarding the cause of the accident. Leonard prepared a diagram of the accident scene, including skid marks and vehicle paths, that matched Irwin's reconstruction. He explained that the tire marks in the center lane were made by the HEB trailer's ABS brakes as the trailer was hit by the dump truck. He also explained that the initial impact between the back of the dump truck and the right front of the HEB truck caused the rightward movement of the two trucks. Leonard stated that the only possible explanation for the accident was that it occurred in the middle lane when the dump truck crossed lanes and hit the HEB truck.

Ruiz and G.E.M. contend the jury was not free to disregard the testimony of three independent eyewitnesses because the expert testimony was not supported by a scientific basis and was therefore incompetent. *See City of Keller*, 168 S.W.3d at 813. However, Ruiz and G.E.M. did not object at trial that Irwin and Leonard's testimony was not scientifically supported, nor do they explain on appeal how the scientific basis is deficient. Further, despite Ruiz and G.E.M.'s argument, the eyewitness testimony was not entirely consistent. It was possible for the jury to believe the expert testimony over that of the eyewitness testimony. "Jurors are the sole judges of the credibility of the witnesses and the weight to give their testimony [and] may choose to believe one witness and disbelieve another." *Id.* at 819. As a reviewing court, we are not free to impose our own opinion in

place of the jury's. *Id.* Accordingly, we hold the evidence is legally and factually sufficient to support the jury's finding on the issue of proximate cause. Ruiz and G.E.M.'s second issue is overruled.

### *Evidence of Positive Drug Test*

In their sixth issue, Ruiz and G.E.M. contend the trial court erred in admitting evidence of Ruiz's failed drug test two years before the accident. At trial, the jury was informed that Ruiz tested positive for cocaine in September of 2002, more than two years before he began working for G.E.M. While there was undisputedly no evidence of drug usage in this accident, the Guerra family contends that the positive drug test was relevant to the issue of negligent entrustment and was properly admitted; as a preliminary matter, they maintain that the issue was not preserved for appeal because Ruiz and G.E.M. made no objection to the admissibility of the test results at trial. We agree that this issue was waived.

"As a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion." TEX. R. APP. P. 33.1(a)(1). Ruiz and G.E.M. initially raised the issue of the admissibility of the positive drug test through a pre-trial motion in limine; the trial court granted the motion as to voir dire. The next day, during a bench conference, the trial court ruled that references to the positive drug test would be allowed during opening statements; Ruiz and G.E.M. objected, and the trial court assured them that their complaint would be preserved if they made their objections at the time the evidence was presented to the jury. During trial, however, Ruiz and G.E.M. failed to lodge an objection when the issue of Ruiz's positive drug test was raised. Ruiz testified via video deposition about his positive drug test, and three other witnesses testified regarding Ruiz's positive drug test; each time, Ruiz and

G.E.M. failed to object. Further, when the Yorfino family offered an exhibit demonstrating the positive drug test result, it was admitted without objection from Ruiz and G.E.M. By failing to present their complaints to the trial court, Ruiz and G.E.M. waived the argument that evidence of the positive drug test was erroneously admitted. *See* TEX. R. APP. P. 33.1(a); *Magna Donnelly Corp. v. DeLeon*, 267 S.W.3d 108, 114 (Tex. App.—San Antonio 2008, no pet.) (holding that failure to raise timely objection at trial results in waiver of issue on appeal). Accordingly, Ruiz and G.E.M.'s sixth issue is overruled.

### *Negligent Entrustment*

Ruiz and G.E.M. next argue that the trial court erred in entering judgment in favor of the Guerra family because there was legally and factually insufficient evidence to support the jury's findings that G.E.M.'s negligent entrustment of a vehicle to Ruiz proximately caused the accident.

The elements of negligent entrustment are: (1) entrustment of the vehicle by the owner; (2) to an unlicensed, incompetent, or reckless driver; (3) that the owner knew or should have known at the time of entrustment to be unlicensed, incompetent, or reckless; (4) that the driver was negligent on the occasion in question; and (5) that driver's negligence proximately caused the accident. *See Goodyear Tire & Rubber Co. v. Mayes,* 236 S.W.3d 754, 758 (Tex. 2007) (per curiam) (citing *Schneider v. Esperanza Transmission Co.*, 744 S.W.2d 595, 596 (Tex. 1987)); *Avalos v. Brown Auto. Ctr., Inc.,* 63 S.W.3d 42, 48 (Tex. App.—San Antonio 2001, no pet.). The parties do not dispute the first element, and, as discussed *supra*, we have already held that there was sufficient evidence to support the jury's finding that Ruiz's negligence proximately caused the accident. *See Broesche v. Bullock*, 427 S.W.2d 89, 94 (Tex. Civ. App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.) (holding that there is no need to establish proximate causation flowing from the entrustment if the driver's

negligence is already found to have caused the accident). Accordingly, we must determine whether sufficient evidence supports the findings that Ruiz was an unlicensed, incompetent, or reckless driver, and that G.E.M. knew or should have known this at the time of entrustment.

The evidence at trial showed that Ruiz applied to work for G.E.M. on September 16, 2004. At the time, Bradley Friesenhahn was responsible for hiring practices at G.E.M. He gave Ruiz a drug test, which was negative, and obtained a three-year driving history report, which reflected one speeding citation. Friesenhahn did not obtain Ruiz's driving record directly from the Texas Department of Public Safety, nor did he inform the company he used to obtain Ruiz's driving history that he was required to comply with federal and state regulations concerning drivers of commercial vehicles. Friesenhahn acknowledged that he was unfamiliar with regulations requiring G.E.M. to contact Ruiz's former employers, and he did not do so. In addition, Jose Vela testified that he was responsible for training G.E.M. employees to drive trucks. He accompanied Ruiz over a three-day period to observe his driving; Vela was not concerned with Ruiz's driving history. Finally, Gary Friesenhahn, G.E.M.'s vice president, testified that he understood G.E.M. had an obligation under state and federal regulations to conduct driver history checks; however, at the time Ruiz was hired, he was not aware of such requirements.

Peter Philbrick, a trucking industry driving expert, testified extensively regarding the regulations pertaining to commercial motor vehicle safety. He stated that a commercial motor vehicle employer is required to obtain a prospective employee's driving record for the past five years from the Texas Department of Public Safety. Philbrick also testified that a commercial motor vehicle employer is required to request controlled substances information, specifically, verified positive drug tests, from a prospective driver's previous employers for the past two years. If the employer obtains

information from a previous employer revealing that the prospective driver tested positive for a controlled substance, then the employer is prohibited from permitting the driver to drive a commercial vehicle until the driver completes the return-to-duty requirements, which include a drug education program or rehabilitation, if recommended by a substance abuse professional.

The Yorfino family introduced Ruiz's Texas Department of Public Safety driving history record, reflecting that Ruiz received five speeding citations—one while driving a commercial vehicle—in the five years prior to the accident at issue. Additionally, Ruiz's commercial motor vehicle driving privilege was disqualified for sixty days in 2002 because he received two speeding citations within thirty days of each other. Evidence of Ruiz's positive drug test for cocaine while working for a previous employer in September of 2002 was also introduced. Ruiz admitted that he did not complete a drug education program or rehabilitation after testing positive for cocaine.

According to Philbrick's testimony, which the jury was free to believe, Ruiz was *per se* unqualified to drive a commercial motor vehicle at the time of the accident because he had not completed the return-to-duty requirements after testing positive for a controlled substance. Had G.E.M. complied with the statutory requirements and contacted Ruiz's former employer, they would have known that Ruiz was unqualified to drive a commercial vehicle. *See Morris v. JTM Materials, Inc.*, 78 S.W.3d 28, 49 (Tex. App.—Fort Worth 2002, no pet.) ("An employer owes a duty to its other employees and to the general public to ascertain the qualifications and competence of the employees it hires, especially when the employees are engaged in occupations that require skill or experience and that could be hazardous to the safety of others."). We conclude the evidence is sufficient to support the jury's determination that G.E.M. negligently entrusted the dump truck to Ruiz. Ruiz's and G.E.M.'s third issue is overruled.

***Conscious Pain and Suffering***

In their fourth issue, Ruiz and G.E.M. contend the evidence is legally and factually insufficient to support the jury's award of $400,000 to Daniel Guerra, Jr.'s estate for the physical and emotional pain he suffered prior to his death. In Texas, only pain consciously suffered and experienced is compensable. *SunBridge Healthcare Corp. v. Penny,* 160 S.W.3d 230, 248 (Tex. App.—Texarkana 2005, no pet.). Its existence may be established by circumstantial evidence, or inferred or presumed as a consequence of severe injuries. *Id.*; *Borth v. Charley's Concrete Co., Inc.,* 139 S.W.3d 391, 395 (Tex. App.—Fort Worth 2004, pet. denied). "The duration of the pain and mental anguish is an important consideration." *HCRA of Tex., Inc. v. Johnston*, 178 S.W.3d 861, 871 (Tex. App.—Fort Worth 2005, no pet.).

At trial, Jeffrey Rumsey testified that on the morning of the accident, he was driving in front of the trucks driven by Ruiz and Daniel Guerra, Jr. He stated that the HEB truck violently careened to the right after losing control. From his rearview mirror, Rumsey observed Daniel Guerra, Jr. looking "very panicked." Wayne Ratliff testified that he was on the access road and about to enter the highway when he witnessed the accident. He stopped to see if he could help, but the cab of the HEB truck was demolished and on fire, and he did not think the driver was alive. Steve Irwin, an accident reconstructionist, testified that from the time the first skid mark was left on the roadway until all the vehicles came to rest probably amounted to five seconds.

Ruiz and G.E.M. contend that because Daniel Guerra, Jr. died mere seconds after the crash, any award for conscious pain and suffering is not justified. However, "consciousness of approaching death is a proper element to be considered in evaluating mental suffering." *Jenkins v. Hennigan*, 298 S.W.2d 905, 911 (Tex. Civ. App.—Beaumont 1957, writ ref'd n.r.e.); *see, e.g., Mo. Pac. R.R. Co. v.*

*Lane,* 720 S.W.2d 830, 833 (Tex. App.—Texarkana 1986, no writ) ($19,500 award upheld for pain and suffering due to terror and mental anguish decedent suffered for six to eight seconds before a train struck his truck); *Hurst Aviation v. Junell,* 642 S.W.2d 856, 859 (Tex. App.—Fort Worth 1982, no writ) ($20,000 mental anguish award affirmed where decedent suffered horror of his impending doom during the fleeting seconds that his airplane plummeted to earth after a mid-air collision); *see also Yowell v. Piper Aircraft Corp.,* 703 S.W.2d 630, 634 (Tex. 1986) (although amount was not challenged on appeal, jury awarded $500,000 to each of four decedents for mental anguish suffered from the brief time airplane broke up in mid-air at 10,000 feet until it crashed on the ground). Although there is no evidence that Daniel Guerra, Jr. was conscious after the vehicles came to a stop, there was evidence that he was conscious while his truck careened out of control and that he was panicked, and presumably, aware of his impending death. *See Gen. Motors Corp. v. Saenz*, 829 S.W.2d 230, 244 (Tex. App.—Corpus Christi 1991), *rev'd on other grounds*, 873 S.W.2d 353 (Tex. 1993) (upholding award for conscious pain and suffering where impending crash caused "panic steering"). Accordingly, we find this evidence sufficient to support a finding of mental anguish suffered prior to Daniel Guerra, Jr.'s death.

Furthermore, we conclude the jury's award is supported by factually sufficient evidence. *See Pope v. Moore*, 711 S.W.2d 622, 624 (Tex. 1986) (appellate court employs factual sufficiency analysis in determining whether damages are excessive, and reviews entire record to determine whether sufficient evidence supports damage award). The jury has wide latitude in determining the amount of an award for pain and suffering. *Southwest Tex. Coors, Inc. v. Morales*, 948 S.W.2d 948, 951 (Tex. App.—San Antonio 1997, no writ). "Matters of pain and suffering, which are necessarily speculative and not subject to precise mathematical calculations, are particularly within the province

of the jury to resolve and to determine appropriate amounts." *Id.* at 951-52. Given the testimony that

Daniel Guerra, Jr. appeared panicked in the last seconds before his death, and the testimony that the

HEB truck caught fire, we cannot conclude the award of $400,000 to his estate is excessive.

Accordingly, Ruiz and G.E.M.'s fourth issue is overruled.

## CROSS-APPEAL

In their cross-appeal, the Guerra family claims the trial court abused its discretion in assessing

Sterling's court costs solely against the Guerra family. At trial, the Guerra family's expert testified

that certain bolts in the Sterling truck were defective, and therefore affected the accident. However,

the jury determined that the negligence of Ruiz and G.E.M. caused the accident, and found no liability

on the part of Sterling. The trial court entered judgment on the jury's verdict, and ordered that Sterling

recover all of its court costs from the Guerra plaintiffs.

The Guerra family maintains that pursuant to Rule 131 of the Texas Rules of Civil Procedure

the Yorfino family was also Sterling's adversary, and as such should have been ordered to share in

paying Sterling's court costs. *See* TEX. R. CIV. P. 131 ("The successful party to a suit shall recover

of his adversary all costs incurred therein, except where otherwise provided."). Further, the Guerra

family maintains that because the trial court did not state on the record its reason for shifting all costs

to the Guerra family, Rule 141 permitting the trial court to assess costs in a manner other than as

provided by Rule 131 is inapplicable. *See* TEX. R. CIV. P. 141 ("The court may, for good cause, to

be stated on the record, adjudge the costs otherwise than as provided by law or these rules."). In

response, Sterling contends that the Guerra family was Sterling's true adversary for purposes of Rule

131, because they were the only party to present evidence and argue that a defect in the design or

manufacture of the Sterling truck contributed to the accident. The Yorfino family, in contrast,

"meekly plead[ed] an alternative theory of recovery alleging Sterling's negligence," and did not present any evidence at trial claiming the truck was defective or Sterling was negligent. Sterling further contends that the good cause requirement of Rule 141 is only triggered where the prevailing party is not awarded its full recoverable costs. *See* TEX. R. CIV. P. 141.

We review the trial court's assessment of court costs for an abuse of discretion. *Rogers v. Walmart Stores, Inc.,* 686 S.W.2d 599, 601 (Tex. 1985); *Moore v. Trevino*, 94 S.W.3d 723, 729 (Tex. App.—San Antonio 2002, pet. denied). Under this standard, we will not overrule the trial court's decision unless it acted unreasonably, arbitrarily, or without reference to guiding rules or principles. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). We review the entire record to determine whether the trial court abused its discretion. *Mercedes-Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex. 1996).

As a successful party, Sterling was entitled to recover court costs from its adversary. *See* TEX. R. CIV. P. 131. "Adversary" is defined in common usage as "one that contends with, opposes, or resists." *See* MERRIAM-WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 59 (9th ed. 1991). This court has described an "adverse party" as one whose position at trial and on appeal has been one of open hostility toward any judgment favorable to the successful party. *Hohenberger v. Schnitzer*, 235 S.W.2d 466, 469 (Tex. Civ. App.—San Antonio 1950, writ ref'd). With that in mind, we turn to the record.

During trial, the Guerra family stressed the theory that certain bolts in the HEB truck failed, thus causing the accident. In opening arguments, the Guerra family's counsel stated, "Sterling-Freightliner is taking the position that there is nothing wrong with their bolts . . . And I think you're going to find, after listening to the experts, that that testimony is just not credible. . . . 'How many

Danny Guerras do you have to kill before you will even go and test your bolts?' Because, ladies and gentlemen, Sterling-Freightliner has done no testing of these bolts to refute what our experts say." The Guerra family's expert metallurgist, Edward Cox, testified that certain Sterling bolts consistently fail at a specified torque range. Cox stated that those particular bolts were defective and that Sterling was negligent in their application. In closing, the Guerra family's counsel stated that although she believed the G.E.M. truck struck the HEB truck, there was "more to the story," arguing "[i]t happened because Sterling-Freightliner had a defective bolt in the front-right spring hanger of that truck. . . Was there a manufacturing defect? Absolutely. . . . Was there a design defect? Absolutely." Counsel stressed that, "it is extremely important to the Guerra family that Sterling-Freightliner be found to be the majority negligent in this case, because they really believe that Sterling-Freightliner is responsible for Danny Guerra's death."

To the contrary, the Yorfino family did not present any evidence at trial claiming the HEB truck was defective or that Sterling was negligent. During closing argument, counsel for the Yorfino family stressed that liability for the loss of Joseph Yorfino and Daniel Guerra, Jr. lies on Ruiz and G.E.M., and only mentioned Sterling once, stating, "if you determine that Sterling is or is not responsible, any remaining negligence in the charge needs to be split between G.E.M. and Mr. Ruiz." Additionally, during opening arguments, counsel for the Yorfino family stated, "[w]e're not going to be involved in that fight [between the Guerra family and Sterling as to whether a defect in the HEB truck caused the accident] . . . . We believe that Ruiz caused the accident. Mr. LeGrand [counsel for the Guerra family] and Sterling will fight out whether or not the truck[,] or the defective truck[,] contributed to that." As Sterling points out, it was to the Guerra family's benefit to place blame on Sterling because of the statute of limitations defense asserted against the Guerra family by Ruiz and

G.E.M. In fact, during closing argument, counsel for the Guerra family stated that, "[i]t is important to the Guerra family that Sterling be at least 50 percent at fault in this case. That is extremely important, okay?"

Based on our review of the record, we agree that the Guerra family was Sterling's only true adversary. Although the Yorfino family had pleadings on file alleging Sterling's negligence, they did not present any evidence or make any arguments in support of such a theory. Because Rule 131 provides that the successful party shall recover all costs from his adversary, the trial court did not abuse its discretion in ordering the Guerra family to pay Sterling's court costs. *See* TEX. R. CIV. P. 131. The Guerra family's issue on cross-appeal is overruled.

## CONCLUSION

Based on the foregoing analysis, we reverse the trial court's judgment in favor of Henrietta Guerra, Christopher Guerra, and Jonathan Guerra, and render judgment that Henrietta Guerra, Christopher Guerra, and Jonathan Guerra take nothing on their claims against Ruiz and G.E.M. In all other respects, the judgment of the trial court is affirmed.

Phylis J. Speedlin, Justice