

# NUMBER 13-16-00435-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

PRIMITIVO ESCOBEDO,
INDIVIDUALLY, SAN JUANITA
ESCOBEDO, INDIVIDUALLY,
AND MARTHA ESCOBEDO,
INDIVIDUALLY AND AS
REPRESENTATIVE OF THE
ESTATE OF FABIAN ESCOBEDO,                                     Appellants,

v.

MO-VAC SERVICE, CO., INC.,                                      Appellee.

## On appeal from the 206th District Court
of Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Benavides**
**Memorandum Opinion by Chief Justice Valdez**

Appellants, Primitivo Escobedo, Individually, San Juanita Escobedo, Individually, and Martha Escobedo, Individually and as Representative of Fabian Escobedo (collectively the Escobedos) appeal the trial court's summary judgment in favor of appellee, MO-VAC Service Co., Inc.[1] By six issues, the Escobedos contend that the trial court improperly granted MO-VAC's motion for traditional summary judgment (issues one through three), the trial court improperly granted MO-VAC's motion for no-evidence summary judgment (issues four and five), and the trial court abused its discretion by granting the motions for summary judgment without setting them for hearing or submission (issue six).[2] We affirm in part, and we reverse and remand in part.

## I. BACKGROUND

According to the pleadings, MO-VAC is in the oil and gas field services industry with trucking and warehouse businesses. Fabian worked as an oil field liquid hauler, driving truck tractors and hauling tank trailers for MO-VAC.

On May 30, 2012, Fabian operated MO-VAC's 2007 Mack truck tractor while towing a 1985 white and red Reynolds tank trailer as part of his work duties for MO-VAC. According to the Escobedos, Fabian was "extremely tired and exhausted" and he either fell asleep or "lost control of his ability to properly control the vehicle." The vehicle suddenly changed direction, veering into the improved shoulder and grass area, and the vehicle struck a delineator pole. Fabian attempted to correct his vehicle, which caused it to roll over. Fabian sustained several injuries, including among other things, trauma to his torso, and he died due to positional asphyxiation.

---

[1] Primitivo and San Juanita Escobedo are Fabian Escobedo's parents, and Martha Escobedo is Fabian's sister.

[2] We have renumbered the Escobedos' issues for purposes of this memorandum opinion.

2

The Escobedos filed suit against MO-VAC for wrongful death and an action pursuant to the Texas Survival Statute. MO-VAC filed a motion for traditional summary judgment asserting that the Escobedos lacked standing to sue for wrongful death and asserted an election of remedies affirmative defense. The trial court denied the motion. MO-VAC filed a motion to reconsider and a motion for no-evidence summary judgment. MO-VAC re-urged its traditional motion for summary judgment, and in its motion for no-evidence summary judgment claimed, in relevant part, that there was no evidence of intentional acts or conduct or of conscious pain and suffering. The trial court granted both motions, and this appeal followed.

## II.    TRADITIONAL SUMMARY JUDGMENT

By their first issue, the Escobedos contend that the trial court improperly granted summary judgment on their survival action. By their second issue, the Escobedos contend that the trial court improperly granted summary judgment on their wrongful death claim. By their third issue, the Escobedos contend that the trial court improperly granted MO-VAC's summary judgment on their election of remedies affirmative defense.

### A.    Standard of Review

In a traditional motion for summary judgment, the movant has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a; *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). If the movant's motion and summary judgment proof facially establish a right to judgment as a matter of law, the burden shifts to the non-movant to raise a material fact issue sufficient to defeat summary judgment. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). A defendant seeking a traditional motion for summary

3

judgment must either conclusively disprove at least one element of each of the plaintiff's causes of action or plead and conclusively establish each essential element of an affirmative defense. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995) (per curiam). We review a summary judgment de novo to determine whether a party's right to prevail is established as a matter of law. *Dickey v. Club Corp. of Am.*, 12 S.W.3d 172, 175 (Tex. App.—Dallas 2000, pet. denied).

## B. Survival Action

By their first issue, the Escobedos contend that the trial court improperly granted MO-VAC's motion for traditional summary judgment on the basis that the Escobedos lacked standing pursuant to section 408.001(b) of the Texas Labor Code.[3] *See* TEX. LABOR CODE ANN. § 408.001 (West, Westlaw through 2017 1st C.S.). Section 408.001 establishes that recovery of workers' compensation benefits is the exclusive remedy for the injury or death of an employee covered by workers' compensation insurance unless that employee dies due to an intentional act or omission of the employer or by the employer's gross negligence. *Id.* If an employee *dies* due to the employer's intentional act or omission, then only the deceased's surviving spouse or heirs of the body may recover exemplary damages. *Id.* MO-VAC contends that section 408.001 bars this suit because it was brought by Fabian's parents and sister. *See id.* The Escobedos respond that they are not relying on section 408.001(b)'s exception to bring this suit. The

---

[3] Because standing is a component of subject-matter jurisdiction, we must address the trial court's ruling on MO-VAC's motion for traditional summary judgment first. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553–54 (Tex. 2000) ("Standing is a prerequisite to subject-matter jurisdiction, and subject-matter jurisdiction is essential to a court's power to decide a case."). If we determine that the Escobedos lacked standing, we need not address whether there is evidence supporting the elements of the Escobedos' cause of action.

Escobedos characterize their claim as one for damages under the Texas Survival Statute. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 71.021 (West, Westlaw through 2017 1st C.S.).

At common law, personal injury claims did not survive a person's death. *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005). However, the Legislature enacted the survival statute, which provides that a cause of action for personal injury, among other things, survives a person's death "in favor of the heirs, legal representatives, and estate of the injured person." TEX. CIV. PRAC. & REM. CODE ANN. § 71.021. A survival action "is wholly derivative of the decedent's rights." *Austin Nursing Ctr., Inc.*, 171 S.W.3d at 849. "The actionable wrong is that which the decedent suffered before his death." *Id.* The decedent's legal representatives, his estate, and heirs may recover damages which the decedent sustained while he was alive. *Id.*

"The parties to a survival action seek adjudication of the decedent's own claims for the alleged injuries inflicted upon [the decedent] by the defendant." *Id.* Furthermore, in *Castleberry v. Goolsby Bldg. Corp.*, the Texas Supreme Court has determined that the Texas Workers Compensation Act (TWCA) "does not bar a deceased's cause of action for intentional injuries which survive to the estate" under the survival statute. 617 S.W.2d 665, 666 (Tex. 1981). The *Castleberry* court explained that the TWCA does not exempt employers from claims for intentional injuries. *Id.* Thus, if a deceased suffered personal injury prior to death due to the defendant's intentional acts or omissions, his heirs, legal representatives, and estate may pursue the deceased's claims, which are not barred by the TWCA. *Id.*; *Feazell v. Mesa Airlines, Inc.*, 917 S.W.2d 895, 902 (Tex. App.—Fort Worth 1996, writ denied) ("[I]f the decedent had a cause of action against his employer

5

for intentional injuries resulting in death, and if that cause of action survives to his estate, his representatives may assert that cause of action, on behalf of the estate.").[4]

Here, after the motion for traditional summary judgment was filed, the Escobedos amended their pleadings alleging that Fabian suffered personal injuries due to MO-VAC's intentional conduct, which they claimed survived his death. MO-VAC did not address this theory of recovery in its motion for traditional summary judgment. Instead, MO-VAC moved for traditional summary judgment on the basis that the Escobedos, as the parents and sister of the deceased, were not within the class of beneficiaries authorized to recover exemplary damages resulting from the deceased's *death* under section 408.001(b). *See* TEX. LABOR CODE ANN. § 408.001. Granting a motion for summary judgment on a cause of action not addressed in the motion constitutes reversible error. *Mafrige v. Ross*, 866 S.W.2d 590, 591 (Tex. 1993), *overruled in part on other grounds by Lehmann v. Har–Con Corp.*, 39 S.W.3d 191 (Tex. 2001). And because appellee did not challenge the Escobedos' survival claim in its motion for traditional summary judgment, it did not establish as a matter of law that the Escobedos lack standing to bring a survival action.[5] We conclude that the trial court improperly granted MO-VAC's motion for traditional summary judgment on the Escobedos' survival claim. We sustain the Escobedos' first issue.

---

[4] Recognizing that the appellant had made such an allegation in his pleadings in *Feazell v. Mesa Airlines, Inc.*, the court concluded that the trial court improperly granted the defendant's motion for traditional summary judgment because the defendant employer had not established as a matter of law that it had not engaged in intentional conduct that caused the injury to occur. 917 S.W.2d 895, 901–902 (Tex. App.—Fort Worth 1996, writ denied). In that case, the plaintiff alleged that the defendant employer had intentionally caused the decedent's injuries prior to his death by "intentionally requiring [the decedent] to work as a pilot while extremely fatigued and to fly an unpressurized aircraft, not equipped with supplemental oxygen, at an altitude which posed a high risk of hypoxia and fatigue." *Id.* at 897.

[5] Moreover, under *Castleberry v. Goolsby Bldg. Corp.*, the TWCA does not bar the Escobedos' claims that survived Fabian's death. *See* 617 S.W.2d 665, 666 (Tex. 1981).

6

## C. Wrongful Death Claim

By their second issue, the Escobedos contend that the TWCA does not bar a wrongful death claim that is based on intentional conduct. We do not disagree with this statement. However, as previously set out, only a spouse or heirs of the body have standing to bring such an action under section 408.001(b). *See* TEX. LABOR CODE ANN. § 408.001(b); *see Hofer v. Lavender*, 679 S.W.2d 470, 476 (Tex. 1984) ("The Wrongful Death Act created a new cause of action in favor of certain named survivors. The survival statute did not create a new cause of action, but kept alive the cause of action that the deceased might have had."); *Castleberry v. Goolsby Building Corp.*, 608 S.W.2d 763 (Tex. Civ. App.—Corpus Christi 1980), *affirmed*, 617 S.W.2d 665 (Tex. 1981) (explaining that to bring suit for exemplary damages under the TWCA, "the plaintiff must be the surviving husband, wife, or heirs of his or her body" and that "it is well-settled that parents are not heirs of the body"); *see also Little v. Delta Steel, Inc.*, 409 S.W.3d 704, 714 (Tex. App.—Fort Worth 2013, no pet.) ("[T]he Texas wrongful death statute applies only if 'the individual injured would have been entitled to bring an action for the injury if the individual had lived.'"); *R & R Contrs. v. Torres*, 88 S.W.3d 685, 696–97 (Tex. App.—Corpus Christi 2002, pet. dism'd) ("The Texas Legislature has mandated that a claim for exemplary damages survives in the case of a workers' compensation wrongful death claim."). Thus, as to the Escobedos' claims for any intentional acts that caused the deceased's death, the Escobedos lack standing because none of the Escobedos is the spouse or heirs of the body of the deceased. *See id.* Accordingly, the trial court properly granted summary judgment on the Escobedos' wrongful death claims. We overrule the Escobedo's second issue.

7

**D.     Election of Remedies**

By their third issue, the Escobedos contend that the trial court improperly granted Mo-VAC's motion for traditional summary judgment on its affirmative defense of election of remedies.   MO-VAC alleged that because the Escobedos successfully elected to receive benefits under the TWCA, they are barred from pursuing any cause of action regarding Fabian's accident.   Specifically, MO-VAC argued that, by claiming and collecting under the TWCA for accidental injury, the Escobedos had declared that there was no intentional injury, which makes their claims inconsistent.[6]

Election of remedies is an affirmative defense that bars a party from pursuing two inconsistent remedies.  *Medina v. Herrera*, 927 S.W.2d 597, 600 (Tex. 1996).  "Election of remedies is not a favorite of equity and its scope should not be extended."  *Am. Sav. & Loan Ass'n of Houston v. Musick*, 531 S.W.2d 581, 588 (Tex. 1975) (citing *Slay v. Burnett Trust*, 187 S.W.2d 377, 393 (1945)).  An election of remedies defense requires proof of the following:  (1) the appellants successfully exercised an informed choice (2) between two remedies, (3) which are so inconsistent as to (4) constitute manifest injustice.  *Bocanegra v. Aetna Life Ins. Co.*, 605 S.W.2d 848, 851 (Tex. 1980).

To be entitled to traditional summary judgment MO-VAC had to conclusively establish each element of its election of remedies defense.  *See Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995).  Although MO-VAC generally asserted that the Escobedos' claim is barred under their election of remedies defense, it did not specifically mention or address each element of its defense.  Mo-VAC failed to assert that the Escobedos

---

[6] The Escobedos are required in their survival action to prove that MO-VAC's acts were intentional; therefore, although MO-VAC did not mention the Escobedos survival action in their motion for traditional summary judgment, we will address this issue.

8

exercised an informed choice when they applied for and accepted the TWCA benefits and provided no evidence to that effect. *See Bocanegra*, 605 S.W.2d at 851 ("One's choice between inconsistent remedies, rights or states of facts does not amount to an election which will bar further action unless the choice is made with a full and clear understanding of the problem, facts, and remedies essential to the exercise of an intelligent choice."). In addition, Mo-VAC provided no authority or legal argument regarding how the Escobedos' survival action was inconsistent with the collection of TWCA benefits. *See id.* (explaining that election of remedies should not bar a suit when a previous course of action was grounded upon uncertain or undetermined facts). And, MO-VAC provided no argument, legal authority, or evidence regarding how the Escobedos' survival action constituted a manifest injustice. *See id.* (explaining that the inconsistency in the remedies sought must be either "so unconscionable, dishonest, contrary to fair dealing, or so stultifies the legal process or trifles with justice or the courts as to be manifestly unjust"). Accordingly, we cannot conclude that MO-VAC conclusively established its affirmative defense of election of remedies. *See id.*; *see also Cathey*, 900 S.W.2d at 341. As a result, the trial court improperly granted summary judgment on that basis. We sustain the Escobedos' third issue as it relates to their remaining survival action.

### III. NO-EVIDENCE SUMMARY JUDGMENT

#### A. Standard of Review

A party may move for summary judgment on the ground that no evidence exists of one or more essential elements of a claim on which the adverse party bears the burden of proof at trial. TEX. R. CIV. P. 166a(i); *Timpte Inds., Inc. v. Gish*, 286 S.W.3d 306, 310

9

(Tex. 2009). Once the motion is filed, the burden shifts to the non-movant to produce evidence raising a genuine issue of material fact on the elements specified in the motion. Tex. R. Civ. P. 166a(i); *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). If the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact, summary judgment is improper. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions," while less than a scintilla exists when the evidence is "so weak as to do no more than create mere surmise or suspicion." *Id.*; *Reynosa v. Huff*, 21 S.W.3d 510, 512 (Tex. App.—San Antonio 2000, no pet.). "When reviewing a no-evidence summary judgment, we 'review the evidence presented by the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not.'" *Timpte Inds., Inc.*, 286 S.W.3d at 310.

**B.    Intentional Conduct**

By their fourth issue, the Escobedos contend that the trial court improperly granted Mo-VAC's motion for no-evidence summary judgment on the basis that the Escobedos failed to provide more than a scintilla of evidence raising a question of fact regarding whether Mo-VAC's intentional conduct caused the accident.[7]

**1.    Applicable Law**

---

[7] We note that MO-VAC did not state the elements of the Escobedos' survival cause of action in their motion for no-evidence summary judgment, and it appeared to only challenge the wrongful death action. However, because a showing of intentional conduct is required in a survival action, and MO-VAC stated there is no evidence of intentional conduct, we will address it here.

The elements of a survival action include the following: (1) the plaintiff is the deceased's estate's legal representative; (2) a cause of action existed in favor of the deceased prior to his death for personal injury to his health, reputation, or person; (3) if the decedent had lived, the decedent would have been entitled to bring an action for the injury; and (4) the defendant's wrongful conduct caused the decedent's injury. *Russell v. Ingersoll–Rand Co.*, 841 S.W.2d 343, 345 (Tex. 1992). And, as previously set out, in the context of the TWCA, the Escobedos can only bring a survival action based on Mo-VAC's intentional conduct. *See Castleberry*, 617 S.W.2d at 666.

### 2. Discussion

In its motion for no-evidence summary judgment, Mo-VAC alleged that there was "no evidence of intentional conduct on the part of [the Escobedos]." As previously stated, the TWCA is the exclusive remedy for an employee who, while in the course of his or her employment, sustained an injury unless that injury was sustained as a result of the defendant employer's intentional conduct. *Castleberry*, 617 S.W.2d at 666. Thus, we must review the Escobedos' summary judgment evidence to determine whether they brought forth more than a scintilla of probative evidence to raise a genuine issue of material fact regarding whether Mo-VAC intended to injure the deceased. *See Feazell*, 917 S.W.2d at 898 (characterizing the issue as whether the employer had an intent to injure the decedent).

In *Reed Tool Co. v. Copelin*, the Texas Supreme Court stated that "[t]he fundamental difference between negligent injury, or even grossly negligent injury, and intentional injury is the specific intent to inflict injury." 689 S.W.2d 404, 406 (Tex. 1985). Relying on the Restatement Second of Torts, the *Reed* Court defined intent as meaning

11

that "'the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it.'" *Id.* (citing and quoting Restatement (Second) of Torts § 8A (1965)). The *Reed* Court explained that generally the courts have not found the employer's action to be intentional in the following scenarios: (1) the intentional failure to provide a safe workplace; (2) the intentional modification or removal of safety controls or guards; (3) the intentional violation of safety regulation; (4) the intentional failure to train an employee to perform a dangerous task; and (5) requiring an employee to work long hours. *Id.* at 407. The *Reed* Court recognized the harshness of that rule and noted that "it is not the gravity or depravity of the employer's conduct but rather the narrow issue of intentional versus accidental quality of the injury." *Id.* The *Reed* Court then held that "the intentional failure to furnish a safe workplace does not rise to the level of intentional injury, *except when the employer believes his conduct is substantially certain to cause the injury.*" *Id.* (emphasis added).

In *Rodriguez v. Naylor Industries*, a supervisor knowing that the tires of the vehicle were defective ordered a delivery truck driver employee to drive the vehicle anyway. 763 S.W.2d 411, 412 (Tex. 1989). A blowout occurred, and at this point, the supervisor told the driver to take one of the four tires off the back axle to replace the ruined front tire. *Id.* The driver informed the supervisor that driving the truck without all six tires was illegal. *Id.* The supervisor told the driver to continue driving anyway. *Id.* Another tire blew out causing the truck to flip over and injured the driver. *Id.* The driver's wife sued the employer for intentional conduct causing the driver's injuries. *Id.* In its motion for summary judgment, the employer argued that the TWCA barred the claims because the employer had established as a matter of law that its conduct did not constitute an

12

intentional tort. *Id.* The employer cited the driver's testimony that "he did not know of any reason that anyone [from his employer who] would want to see him injured." *Id.* In response to the employer's motion for traditional summary judgment, the plaintiff provided the affidavits of two experts. *Id.* Both experts stated that the supervisor would have been substantially certain that the blowout would have occurred. *Id.* at 413. In addition, one of the witnesses stated that "a supervisor would also be substantially certain that the blowout would cause the truck to go out of control." *Id.* Relying on the expert reports, the Texas Supreme Court concluded that a fact question existed regarding the employer's intent. *Id.*

In *Welch v. Reynolds Metals Co.*, an employee, Kelly Welch, was required, on numerous occasions, to work with asbestos-containing products. No. 13-99-394-CV, 2000 WL 35729506, at *1 (Tex. App.—Corpus Christi Dec. 29, 2000, pet denied) (mem. op.). Welch claimed that the employer "did not discuss either the dangers of working with asbestos or the precautionary measures available to prevent inhalation of asbestos fibers." *Id.* Eventually, other employees informed Welch of the danger of asbestos exposure and recommended that he use protective equipment to prevent inhalation of the asbestos fibers. *Id.* After several years of working for the employer, Welch was diagnosed with asbestosis. *Id.*

Welch filed suit against the employer for an intentional injury. *Id.* The employer filed a no-evidence motion for summary judgment claiming that there was no evidence of intentional conduct because Welch could not show that the employer "had either a specific intent or an awareness of substantial certainty that its conduct would result in harm to" Welch. *Id.* Welch provided summary judgment evidence of, among other things,

13

the affidavit of Richard Cohen, M.D. *Id.* Dr. Cohen stated that the employer "realized that if their workers such as Kelly Welch ware exposed to harmful levels of asbestos, those workers were substantially certain to contract asbestos-related injuries." *Id.* Dr. Cohen also "opined that the documents demonstrated that [the employer] had implemented policies and procedures to protect against the asbestos exposure"; however, "those policies and procedures were either not being effectively conveyed to workers such as Welch, or that the policies were being ignored or not followed." *Id.* Dr. Cohen stated that the employer must have known that Welch was being exposed to asbestos without protection and that the employer had placed Welch in an asbestos surveillance program because the employer realized that Welch's job required the possibility of significant asbestos exposure. *Id.* Dr. Cohen concluded that the employer "knew to a substantial certainty that workers such as Kelly Welch would contract asbestos disease by reason of their jobs at the Gregory, Texas plant." *Id.*

The trial court granted the employer's motion for no-evidence summary judgment. *Id.* at *2. This Court reviewed the trial court's judgment to determine whether Welch's summary judgment evidence created a genuine issue of material fact regarding the employer's intent to cause the injury. *Id.* at *7.

We recognized in *Welch* that the courts of appeals have struggled with determining the distinction between an intentional injury requiring proof of the employer's substantial certainty of injury and non-intentional injuries. *Id.* at *6. We said that "[t]he line of demarcation between an actionable, intentional act and a dangerous, yet nevertheless non-compensable, negligent act is ambiguous." *Id.* at *4. Thus, we relied on *Reed* and *Rodriguez* to guide our analysis. We explained that the *Reed* Court focused on evidence

14

that the injured employee's misuse of the machinery caused his injury while the *Rodriguez* court "focused on the evidence which tended to show that roll-over was substantially certain to follow the fact that the tires on the truck were maintained in an unsafe condition." *Id.* at *6. We stated that a "significant difference between *Reed* and *Rodriguez* stems from the fact that the summary judgment proof showed that the specific injury Rodriguez suffered was exactly the injury which was substantially certain to occur from [the employer's] conduct" while in *Reed*, the employee's "injuries were wholly accidental, even though attributable" to the employer's actions. *Id.* We concluded that the case was closer to *Rodriguez* than it was to *Reed* and that the evidence provided by Dr. Cohen presented more than a scintilla of probative evidence which tended to put the employer's intent into question. *Id.* at *6–7.

Here, appellants' summary judgment evidence included the affidavit of Urbano Garza, a terminal manager for MO-VAC. Garza stated that he had been in the trucking industry his entire life. Garza testified that he is familiar with the Department of Transportation (DOT) regulations that were in effect at the time of the Fabian's accident. Specifically, Garza said that he was familiar with "the regulations relating to time logging and recordation of duty status." Garza stated that he was familiar with Fabian's accident because he participated in "the company's (limited) investigation of the crash and its cause . . . ."

According to Garza, at the time of the accident, "the oil fields of West Texas and South Texas were booming," and Mo-VAC "could not keep up with demand for drivers." Garza stated, "Management of the company forced upon me and the dispatchers, a clear

15

directive to have the drivers work unsafe hours rather than let a competitor get the jobs which were demanded by our customers."

Garza stated, among other things, that (1) the drivers were required to work unsafe amounts of overtime, (2) MO-VAC intentionally violated the DOT regulations regarding hours worked, (3) MO-VAC required its drivers to work illegal amounts of time, (4) MO-VAC required drivers to falsify their logs, (5) Garza warned Mo-VAC's managers that the environment was dangerous, (6) drivers were working at least 100 hours per week and nineteen to twenty-four hours straight per day, and (7) the supervisors told the drivers "don't get killed out there."

Based on his participation in the investigation of the accident, Garza believed that the cause of death was fatigue due to MO-VAC's intentional practice of overworking drivers and falsifying logs. Garza testified that he believed that his supervisor "was clearly anticipating an eventual injury or death" based on his supervisor's verbal statements to Garza and his supervisor's interactions with Garza and other staff members. Garza believed that despite anticipating an eventual injury or death, MO-VAC "intentionally pressed for more production . . . ." Garza did not believe MO-VAC's acts were the result of carelessness or recklessness, and instead believed its acts were intentional.

Garza described the work environment as "obviously unsafe" and stated that he complained about the dangers. Garza averred that despite his warnings of a tragedy waiting to happen, his supervisors were more concerned about making money. Garza stated that management "demonstrated verbally that they were plainly aware of the substantial certainty that one of [the] drivers, including [Fabian], would be injured or killed due to overwork." And, according to Garza, one of his supervisors "was not simply

16

dismissive of the possibility of a crash" and instead acknowledged on more than one occasion "his awareness that a crash was inevitable . . . ." Garza claimed that when he warned that a driver would be killed because of the unreasonable driving hours, the supervisor said, "we will cross that bridge when we come to it."

Garza observed that, although the driver's work was not in DOT compliance, the DOT compliance clerk requested, demanded, and insisted that drivers alter their work logs to show that they followed DOT sleep and rest regulations. The DOT clerk told drivers that this practice of altering their logs made "it appear [as if] they did not exceed the number of straight hours worked without 'resetting' and getting rest." Garza explained that the drivers had poor sleeping conditions and were "encouraged to sleep on a sheet of plywood stretched across their seat." Based on his own experience, Garza believed that this type of sleeping environment made it difficult for a person to sleep, and he stated that "it is difficult to get by with catnaps" in such sleeping conditions while working long hours. MO-VAC's managers knew about these conditions, and according to Garza "really did not care."

Garza concluded that based on his observations, "it would be simply impossible for [MO-VAC] to have been unaware in May of 2012 that they were going to cause an injury or death" and that MO-VAC intentionally placed Fabian and other drivers "in a situation that [MO-VAC] acknowledged was substantially certain to injure or kill. . . ."

In summary, Garza states unequivocally that he warned his supervisors that an accident would occur due to MO-VAC's conduct of requiring drivers to work illegal hours and to falsify their reports to thwart safety standards. Garza explained that it would be impossible for MO-VAC to have been unaware that its intentional conduct would cause

17

injury or death and that MO-VAC intentionally placed Fabian in a situation that it "acknowledged was substantially certain to injure or kill." Garza notes many instances of MO-VAC's alleged awareness of the intentional acts it took, which it knew were substantially certain to cause injury or death.

Reviewing the evidence in the light most favorable to appellants, crediting evidence favorable to them, if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not, we conclude that based on Garza's affidavit, reasonable and fair-minded people could differ in their conclusion regarding whether MO-VAC believed its conduct was substantially certain to cause the injury to Fabian. *See Timpte Inds., Inc.*, 286 S.W.3d at 310. Thus, the Escobedos brought forth more than a mere scintilla of probative evidence to raise a genuine issue of material fact, and summary judgment is improper. *King Ranch, Inc.*, 118 S.W.3d at, 751. We sustain the Escobedo's fourth issue.

## C.     Conscious Pain and Suffering

By their fifth issue, the Escobedos contend that the trial court improperly granted summary judgment on the basis that they failed to produce more than a scintilla of probative evidence raising a fact issue regarding whether Fabian had conscious pain and suffering after the accident and prior to his death. MO-VAC responds that the Escobedos provided no evidence that Fabian was conscious after the accident.

In Texas, a party may only recover damages for pain that is consciously suffered and experienced by the deceased. *SunBridge Healthcare Corp. v. Penny*, 160 S.W.3d 230, 248 (Tex. App.—Texarkana 2005, no pet.). The presence or absence of physical pain is an inherently subjective question. *Id.* We may infer pain and suffering from proof

18

that the deceased had severe injuries. *Id.* Pain and suffering may be established by circumstantial evidence. *Id.*

As to whether Fabian survived the accident, the Escobedos cite their summary judgment evidence which included, among other things, the medical report of Fabian's death, an abstract concerning positional asphyxia, and a crash report. The Escobedos point first to the medical report stating that Fabian died of positional asphyxia and then to an abstract of a scholarly work on positional asphyxia as it relates to automobile accidents. The abstract states that "[p]ositional asphyxia occurred in positions interfering with normal respiration, including inversion" and "none of the occupants had injury severe enough to result in death at the scene if they had not first died of asphyxia." In addition, the medical report stated that the examiner did not see any indications of blunt force trauma to the Fabian's head, and the examiner only saw trauma to his torso. However, the medical examiner did not attribute Fabian's death to the trauma of the torso. Finally, the Escobedos point to the crash report stating that Fabian took evasive action during the accident by overcorrecting, causing the vehicle to rollover.

The evidence showed that Fabian took evasive action which caused the vehicle to rollover and that he did not die from his injuries but instead suffocated. This evidence constitutes circumstantial evidence that would allow reasonable and fair-minded people to differ in their conclusions regarding whether Fabian was conscious after the accident occurred. And, there is nothing in the record indicating that Fabian died upon impact. Even if he did, however, as we can presume conscious pain and suffering from proof that Fabian suffered severe injury, there is question of fact regarding whether he felt pain when the impact occurred as he had contusions and broken ribs and the evidence shows

19

that he was conscious just prior to impact as he took evasive action. *See id.*; *see also Borth v. Charley's Concrete Co.*, 139 S.W.3d 391, 396 (Tex. App.—Fort Worth 2004, pet. denied) (concluding a question of fact remained regarding whether the decedent, who had been struck and killed by a concrete truck as he rode his bike, suffered conscious pain and suffering because the autopsy indicated that the decedent had a large open wound to the inner thigh and another inside the right arm, his head had bruising and abrasions, and the cause of death was listed as "multiple blunt force injuries"). Moreover, "consciousness of approaching death is a proper element to be considered in evaluating mental suffering." *Ruiz v. Guerra*, 293 S.W.3d 706, 723 (Tex. App.—San Antonio 2009, no pet.) (allowing recovery of pain and suffering damages even though there was no evidence that the decedent, Daniel Guerra Jr., was conscious after the vehicles came to a stop after a crash, there was some evidence that he was conscious while his truck careened out of control and that he was panicked, and presumably aware of his impending death). Here, evidence exists that Fabian was presumably aware of his approaching death because he took evasive action prior to the rollover of his vehicle. *See id.* Reviewing the evidence in the light most favorable to appellants, crediting evidence favorable to them, if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not, we conclude that a question of fact remains regarding whether Fabian suffered conscious pain and suffering. *See id.* We sustain the Escobedos' fifth issue.[8]

## IV. CONCLUSION

---

[8] We need not address the Escobedos' sixth issue as it is not dispositive of this appeal. *See* TEX. R. APP. P. 47.1.

20

We affirm the trial court's judgment in part regarding the Escobedos' wrongful death claim, and we reverse the trial court's summary judgment in part regarding the Escobedos' survival action and damages for conscious pain and suffering related to their survival action. We remand to the trial court for further proceedings consistent with this memorandum opinion.

<u>**/s/ Rogelio Valdez**</u>
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
27th day of July, 2018